Good morning and welcome to the Ninth Circuit. We're going to take the cases in the order that they're on the calendar today. Two of the cases on today's calendar, Singh v. Garland and United States v. Figueras, have been submitted on the briefs. Before we begin this morning, Judge Van Dyke and I would like to thank our colleague Joan Erickson from the District of Minnesota, who's sitting with us by designation this week. We very much appreciate having her here. First case on the calendar for argument is United States v. Stokes, and this is one where I think the government is going first. Ms. Packel, who is Mr. Mazur? Yes, good morning, Your Honor. Thank you. And may it please the Court, Ross Mazur on behalf of the United States. I'd like to reserve two minutes for rebuttal, and I'll watch the clock. This Court should reverse based on the District Court's failure to apply the attenuation doctrine under Utah v. Strife. Discovery of a valid preexisting arrest warrant establishes attenuation unless it was discovered by means of purposeful or flagrant police misconduct. Can I stop you there, Mr. Mazur? And I want to ask the same question of both sides, and I know you have limited time, so it would be helpful for me if you could focus on it. Strife says there's a three-part test. Proximity, and everybody agrees the seizure here occurred in close proximity to the unconstitutional conduct, and therefore that favors the defendant. I think it's clear, and I think all our cases make clear, that the discovery of a valid preexisting warrant satisfies step two of the Strife test. It is an intervening circumstance, and I think the District Court probably erred by saying it wasn't an intervening circumstance. But the third part of the test, purposeful or flagrant misconduct, was never addressed by the District Court. The District Court said, I don't have to get there because parts one and two favor the defendant. What do we do with that? Do we send it back to the District Court to address the third part, or do we address it? Well, the government doesn't believe a remand is necessary, Your Honor. The government raised the attenuation exception in its briefing below. The issue was fully briefed, fully considered, and the District Court issued its ruling. Well, but the District Court, as I just said, really didn't, because it made the mistake, I think, of treating the warrant as if it weren't an attenuating circumstance, intervening circumstance. District Court really didn't address the third part. It may have been fully briefed. There may have been evidence presented or not presented, but the Court never addressed it. So my question is should we address it in the first instance, or should we send this back to the District Court and ask it to address it? Well, the District Court's findings on attenuation were pretty conclusory, and so I don't know exactly whether the District Court thought that its very object analysis belonged to the second factor or the third factor or both. But because there are no disputed facts in the record, I believe this Court can review the District Court's decision as is. But, of course, the Court is also free to remand if it thinks that's the better practice. Well, Counsel, maybe consistent with what Judge Herzl just asked about, why, in your view, was it not flagrant? Since I think I agree that everything probably turns on that. I do, too, Your Honor, and thank you. So there's no evidence in the record of flagrant or purposeful misconduct. In granting suppression, the District Court essentially resolved two close issues against the government. First, it ruled that a passenger warrant check is not part of the mission of a traffic stop, of a routine traffic stop under this Court's case law. And second, it ruled that the evidence of marijuana violations in a motor vehicle in this case didn't rise to the level of providing independent reasonable suspicion. But even assuming that the district court was not involved. Well, but you concede in this case that the search that the stop lasted too long. So I'm not sure why any of the District Court, nobody conceded that in front of the District Court. So the District Court was addressing really an issue that's not in front of us, which is, was there any unconstitutional conduct at all? You've conceded that at least at some point the search, these folks were kept Mr. Stokes, I'm sorry, was kept too long. So I'm not sure that the District Court's resolution of those questions has anything to do with the attenuation doctrine. I thought it had to do with whether there was unconstitutional conduct in the first place. Well, the government is only appealing on the attenuation issue, but we're not conceding. No, but no, you're not conceding, but you've asked us to assume for purposes of this case. So I don't, since you've asked us to assume it, I don't think we have, we should go back and revisit whether or not there was unconstitutional conduct. So I don't think, whatever errors you think the Court made there don't really have to do with attenuation, do they? Once you concede, once you concede the stop lasted too long, now we're just facing the issue that Judge Van Dyke asked you about, Part III of the test. What was the evidence? Was there evidence of any flagrant or purposeful misconduct? Tell us what the record tells us. Thank you, Your Honor. And my point in bringing up those two rulings was not to argue that they were incorrect, only to argue that the District Court's ruling resolved very close questions. And because the questions, one legal and one factual, were very close, that if the officers got those issues, made errors of judgment with respect to those issues, those errors were at most negligent and couldn't possibly have risen to the level that strife deemed to constitute flagrant or purposeful misconduct. What do I do with, or how do you respond to, I think what Judge Breyer said in, however you pronounce the case, the Motti case, which is what the District Court in this case really relied on, and he said, well, since your purpose for keeping him past the time when you should have was to wait for the warrant check, that's purposeful misconduct. Respond to that for me. Two responses, Your Honor. First, the purpose of the prolongation was to investigate evidence of drug violations in the motor vehicle, and the defense in this case has never disputed that if the officers had been correct, that the evidence of marijuana established reasonable suspicion, that the officers then would have been justified in running a warrant check on Mr. Stokes' ID as part of the expanded mission of the traffic stop. The second point is that both Motti and the one other District Court case cited below, Maffei, are readily distinguishable from Strife because neither one of those cases actually involved an arrest warrant, a truly intervening factor. Motti involved a suspicionless search condition, and Maffei in other circumstances that the government argued established attenuation. And so it was easy for those other cases to distinguish Strife because they weren't dealing with a judicial mandate to the officer to carry out the provisions, to carry out a ministerial duty of arresting Mr. Stokes, as in this case. Mr. Mazur, do you agree that the officers admitted that they had a routine practice of detaining passengers in order to do a warrant check? No, I don't, Your Honor, and I'd like to make two points. First, in Officer Gunn's declaration, he said that his practice was to run a warrant check on every ID that he obtained during a traffic stop. But the declaration didn't speak to how often he asked for passenger IDs. He also said that in this case, he was specifically investigating evidence that Mr. Stokes was involved in violating several state drug laws. But secondly, even if it were true that the officers had that routine practice, it still wouldn't amount to flagrant or purposeful misconduct because, as the district court below recognized, the law in the Ninth Circuit on whether an officer can request a warrant check even during a routine traffic stop is unsettled. Let me follow up on Judge Erickson's question and refine it a little bit. I agree the law is unsettled about whether you can conduct a routine warrant check on people lawfully stopped. What if the practice, what if the evidence were to show that the practice of the San Francisco police in general or these two officers in particular was not only to request warrant checks, which I think is probably legal if the information is voluntarily provided, but then to unlawfully detain people until the results came back? Would that be purposeful misconduct? Well, if the officers are allowed under this court's decisions to request passenger warrant checks, then those passenger warrant checks belong to the mission of the stop. And so as part of the mission of the stop, it can't constitute unlawful prolongation under Rodriguez. I see that I'm down to 20 seconds. Save your 20 seconds and we'll give you a minute for rebuttal at the end. Thank you, Your Honor. Ms. Packle. Yes, may I please the court, Robin Packle, representing Defendant Kelly Clifford Stokes. I'd like to start by responding to the court's first question. And with all due respect, I disagree with the interpretation of the district court's finding on the attenuation issue in this case. I believe the district court made a finding that the illegal conduct was purposeful for the purpose of doing a warrant check on Mr. Stokes. Assume that's right. I don't think it did, but assume that's right. Is that sufficiently bad? I don't know if purposeful is the word. We often do things on purpose. But is that enough alone to make this the kind of case where, as Strife decides, we ought to apply the very heavy remedy of exclusion, despite the existence of an intervening circumstance? Yes, it is, Your Honor. Because, well, first of all, it's the government's burden to show attenuation. And as the court discussed most recently with government counsel, the government has not challenged that there were Fourth Amendment violations. Do you challenge whether there was an intervening circumstance? I think that the existence of a preexisting warrant was it was an intervening circumstance. I think there's a separate question of whether that or not it supports attenuation in this case. I think the Lowry case from the Eighth Circuit that the government relied on said it's not a per se rule. No, we all understand that, because we wouldn't go to Part 3 of the test if it were a per se rule. Well, I disagree, because we have three factors here. One clearly favors the defense. The warrant factor, I mean, the court seems to be leaning towards favoring the government. Well, how can you distinguish Strife on that point? There's an illegal stop in Strife. They do a warrant check, and they find a valid preexisting warrant, and the court says that's an intervening circumstance. And so it seems to me this is just a matter of law. When you have an intervening circumstance, when you discover a previous valid existing warrant, we now need to get to the tough question, whether or not there's purposeful or flagrant misconduct. But I don't see how there's any room for wiggle on the second part of the test. Just briefly, whether it's considered under the second factor or the third factor, I think the fact that this warrant, the discovery of this warrant, was much more closely tied to the constitutional violation than it was in Strife. In Strife, there was a detention for the purpose of investigating a drug house. It was a legitimate investigation. It was a preexisting investigation. And the constitutional violation was the detention. The officers there asked Mr. Strife some questions. Counsel, I'm pretty familiar with the facts of Strife. In Strife, there's a guy, he's watching a drug house, and as I recall, in that record, he says to himself, next person that walks out, I'm just going to stop that person. I mean, that seems pretty egregious, right? And so he just stops the person with no probable cause, reasonable suspicion. He just stops the person. And yet the Supreme Court found that that wasn't flagrant. Here, you know, it seems at least there was some more of a tie to the possibility that they might have been smoking marijuana in the car, which would have been illegal, or some other illegal activity. Now, the government acknowledges that there was not a legitimate basis to detain them, but how can we find on the third factor that this was flagrant if in Strife or Strife they ended up, you know, the basis for stopping the person in the first instance was he just basically, it was literally random. He said, I'm going to stop the next person that comes out of that house. So I just, I will say that I believe that, again, the district court did find purposefulness, and that is enough as the third factor looks at purposefulness or flagrancy. My question, what does purposefulness mean? That's what was, I mean, that's what I'm struggling with. It just can't mean that the conduct was intentional or knowing, because it must mean something. It must mean that the entire purpose of the unconstitutional conduct was to do something, and that's what I'm trying to figure out, how that matches up with the facts of this case. I agree, Your Honor. I agree with that interpretation of purposefulness, and here the purpose of the officer's unconstitutional conduct in prolonging the stop was to obtain Mr. Stokes' identification and check it for warrants. That was not the purpose of the stop and streak. It was to investigate the drug house. As part of that, they did, but they also asked him other questions. The very purpose. Let me, I'm sorry to interrupt you, but I did, and so you've got to stop when I do. The, is there really a finding here that the entire purpose of the unconstitutional conduct was to do the warrant check? What I read the district court's decision is that because you had no reason to further detain him, therefore your purpose must have been to complete the warrant check. But on this record, it seems to me a perfectly reasonable conclusion is that they were It turns out the district court thought they didn't. It turns out the government's not fighting that. But are we looking at the person's intent as opposed to just a statement that it must be your purpose because there was no other good reason left? Do you see my difficulty with that? I think I do, and there are several pieces to it. I will try to address them all. First, to quote from the district court order, the discovery of the warrant was the very object of the prolonged stop, and that's an ER6. And I don't know how you get around a conclusion that that is not a finding of purposefulness. The very object. And that was, as you say, as you pointed out, that was the finding in Machi on which the district court relied on. Second of all, in terms of what the officers intended, I agree that they say, oh, we also thought there may have been something funny going on with marijuana. But they also say, as you pointed out, that it's their practice to run warrants check on passengers, and they request their identification as a routine matter to do that. And that is what happened in this case. And that's in Officer Gunn's declaration in ER66. So, counsel, can I ask a related question? Slightly different one, though. So let's assume that their purpose was to ask for, you know, you're right, that their only purpose was to run a records check to see if this person had a warrant. I'm still having trouble determining why that is flagrant, particularly because of strife, but also because if it's an open question, as I think you've heard us say, we think it's an open question in our circuit about whether or not you can, if you get somebody's ID, you can run a warrant check. If that's an open question, I mean, the whole purpose of that, it seems like, is the officers are worried about their safety, and they want to know if somebody who has a warrant out for their arrest and therefore is arguably more of a risk to them, they want to know that about the person. Maybe that's okay, maybe that's not okay. It sounds like it's an open question, but what is your argument that that's flagrant? In other words, I'm asking you, even assuming, even if I buy that this was purposeful and it was the only reason they were doing it, how is that flagrant? Well, I think that does go to the purposeful element. I think finding if the government hasn't carried its burden on either, then I think there is no attenuation that we win. But I think there are other factors here that go to the flagrancy element. There are multiple Fourth Amendment violations by the officers in this case. The district court found two independent Fourth Amendment violations. There are also others that we challenged the government did not respond to. And that's a contrast to Street. Do we get to review whether the district court was right about its finding of Fourth Amendment violations? No. Well, but you keep saying there were multiple violations. The government concedes the stop was unnecessarily prolonged. I'm not positive in reviewing this record that I see all the violations the district court perceived. Surely the stop was legal. Nobody doubts that. I think there was reason to investigate up till a point, so the initial detention was probably on reasonable suspicion, okay. It was unduly prolonged, the government concedes. But I'm not sure I see all the Fourth Amendment violations that the district court may have perceived. So if you're relying on them to show purpose, do I then get to go back and review them? I don't think you do. The government waived any arguments against the Fourth Amendment violation. It waived some of them in the district court. No, the government only says we agree the stop was unnecessarily prolonged. It doesn't say there was no suspicion to stop the car. It doesn't say the search of the car was illegal. It doesn't say there was no reasonable suspicion to detain both of these gentlemen for some period of time. It just says Mr. Stokes was kept too long, and I accept that concession. But that's not a concession of all the other things you're talking about, is it? I believe it is, Your Honor. The district court's finding that there was a prolongation depended on the legality of the search of the car because the government argued that there would have been no prolongation if the car search was legal because he would have been detained anyway. District court found that the car search violated the Fourth Amendment. The government has not challenged that on appeal. The government also says it was not challenging the seizure and the search of Mr. Stokes' jacket. Judge Van Dyk is trying to ask a question. So it seems like you have an odd position because you're saying that the government clearly is contesting whether this was flagrant. You're making these arguments in service, I think, of saying that it was flagrant. So, I mean, you're basically saying, well, the government, you know, even though it obviously didn't waive the flagrancy issue, it waived a whole bunch of the issues that go to whether it was flagrant. I don't know how that that can be right. How can it be right? That was the government's choice, Your Honor. If the government wanted to challenge the district court findings on the Fourth Amendment violations, it could have done so. And it tried to instead. Look, counsel, counsel. Yes. Yeah. The government doesn't have there could be a Fourth Amendment violation, but it not be flagrant. Those are two different things, right? Like the government hasn't hasn't waived whether or not those things cause this to be flagrant or not, even if they they're not disputing whether they're a Fourth Amendment violation. Those are two different things. Correct. And I'm saying it's the totality of all those things that show the flagrancy of the police conduct. And I think you would agree, then, that the government hasn't waived the ability to say, no, those were not flagrant, even if they were Fourth Amendment violations. They weren't flagrant. The government hasn't waived that, has it? It has not waived that, but it has waived the ability to say these are not Fourth Amendment violations. Well, I don't understand that. I simply don't understand it. The district court, the government says we will agree for purposes of this appeal that Mr. Stokes was detained too long. And they agree, and I take that as meaning that he was detained up to some point. They don't think legally, but at some point the legal detention ended. Now, I have no idea where that was in this case. I'm not sure it matters because the seizure occurred during a period when it was unnecessarily prolonged. But I don't think that's a concession that the initial stop was without reason, that there was no reason to detain anybody, that there was no suspicion that some illegal activity was occurring within the car. And I don't think the district court found any of that. The district court just said at some point after your investigation proceeded for a while, you had no reason to keep Mr. Stokes any longer. He didn't say when it was. He said, you know, once you – he didn't say it was this minute as opposed to that minute. So I read the district court's decision as being premised on the notion that there was a correct stop, that Mr. Stokes was – that officers were not required to open the door when they made the stop and say, Mr. Stokes, run away, and that they had a reason to investigate for a while. And the district court said, but that reason went away after you discovered the facts. So, you know, I just don't see a concession here by anybody that this stop was permeated with illegality, ab initio. And that's me – that's not a question, unfortunately, but I want to respond to your characterization. But we've taken you way over. Why don't we let you sum up and then we'll give the government some time for rebuttal. Yes, thank you, Your Honor. So just briefly, the government bore the burden of proving the attenuation exception in this case. It did not carry its burden before the district court. It has not carried its burden here. And this court should affirm the district court's determination that this was a purposeful prolongation of the stop for the very purpose of fishing expedition, if you will, for warrants, old outstanding warrants against Mr. Streiff, who was not the target of the stop in this case. Please affirm the findings of the district court. Thank you. Counsel, let's put a – we took your friend about four minutes over, so let's put two minutes on the clock for you. Thank you, Your Honor. I'd like to just respond quickly to a few points. First, there was no waiver argument in the defense answering brief, and so I would only – I would argue that the defense is not – So now we have the you waived the waiver argument. So, okay, proceed. Thank you. Secondly, Your Honor asked about the standard for flagrancy or purposefulness. I think Streiff at least provides a lot of guidance in that regard. Streiff talked about whether the unlawful stop amounted to a suspicionless fishing expedition in the hope of finding warrants, and it suggested that the result only could be different if there were evidence presented of a dragnet search. The court also gave an example of what might constitute flagrant misconduct that came from Calfee, Texas, a Supreme Court case from 2003, where the police failed to get an arrest warrant. Are you – go ahead, Judge Erickson. Well, and Streiff also said, setting aside the case you're about to cite, which we can find, that the third factor isn't purposeful or flagrant, it's purposeful and flagrant. So doesn't that mean that just finding that it was purposeful isn't enough to satisfy that third factor? It's got to be purposeful and flagrant. The overall context in which the word purpose is used gives us some guidance about what it's meant to convey in this context. I'll make that a question. Doesn't it? Yes, Your Honor, I agree with you. I think that's right, and other circuits interpreting Streiff have recognized the very high bar that Streiff created to rise to the level of purposeful misconduct, and I'm especially thinking of the Eighth Circuit's Lowry decision. The defense has tried to distinguish Streiff from this case by arguing that Streiff involved a completely unlawful stop, where this case involved only a brief prolongation, but that actually strengthens the argument for attenuation because the violation was smaller. So is it – I mean, the question that Judge Erickson asked is do you think – at one point they say purposeful and flagrant. I'm not sure does that mean – is that one phrase? In other words, does it mean the conduct must be purposeful and flagrant, or are there two separate predicates there? What's your view? I think it's a good question, and it's possible that the court meant them as separate predicates. But either way, the court provided a lot of guidance on just how high that bar was, and the case that they cited, Calphe, Texas, and many of the other attenuation cases from the Supreme Court, including Brown v. Illinois, were cases where the officers or the government knew that they lacked proper cause and they committed the violation anyway. Okay. So let me take you back to where I started with this. I think the other side argued below – I don't know what the nature of the evidence was. I know, but I don't want to try to summarize it – that actually the San Francisco police have a practice of stopping African Americans from minor traffic violations, conducting – so they may conduct warrant checks and keep people long enough to see what the result is. I don't know whether the evidence bears that out. I don't – the district court certainly did make a finding on it. But if that were the evidence in a case, would that be purposeful or flagrant misconduct? And flagrant misconduct. And or or. I don't know. I need a lexicographer here to tell me whether they are separate or independent clauses or dependent clauses. But would that qualify under Prog. 3 of Streif? Well, if the SFPD had a policy of racial profiling and unjustified stops based purely on race, you know, that would – yeah, that would probably qualify. But there's no evidence in the record that's what happened here. It's true that the defense at least highlighted some news articles. But many of those articles featured statistical evidence on a national level based on studies comparing traffic stops by the percentage of the minority's population in the country. So the record simply doesn't bear that out, even though the defense presented versions of those arguments below. And like I said here, the officers, you know, genuinely, even if mistakenly, believed that they could prolong the stop to investigate the fairly significant evidence of marijuana and potential drug violations in the vehicle. They did that. And so under Streif, there was no purposeful or flagrant misconduct. We've taken your way over. It's an interesting case, and we appreciate the briefing and argument by both sides. And this case will be submitted. Thank you, Your Honor. Thank you. Thank both counsel.
judges: HURWITZ, VANDYKE, Ericksen